creating a lien upon real and personal property which has been or hereafter shall be executed by any corporation." This court held that that statute was restricted to railroad mortgages, but, even if so restricted, still the mortgage, in order to come within the provisions of the statute, would have to be one covering both real and personal property, and that a mortgage upon leasehold interests was not a mortgage upon real property. No suggestion was made as to whether leasehold interests were covered by the chattel mortgage statute in question, and the words therein, "goods and chattels." The question here involved relates solely to the meaning of the words "goods and chattels" in the chattel mortgage statute, and whether these words cover and include leasehold interests in real property. Such leasehold interests are personal property, but this term "personal property" is not used in this chattel mortgage statute. Leasehold interests are chattels real, and not mere chattels. They are covered by the statute respecting the record of conveyances of real estate, the language used being, the term "real estate" shall embrace all "chattels real," etc., and the term "conveyance" shall embrace every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or assigned. The statutory construction law (chapter 677, Laws 1892) in no way changed the classification of leasehold interests. They were regarded as chattels real and personal property, prior to the act of 1892, the same as they are now, while at the same time they were covered by the provisions of the recording acts. The court of appeals, in Booth v. Kehoe, 71 N. Y. 341, correctly construed the chattel mortgage statute, the same now as before the passage of the statutory construction law of 1892. It was then held that this statute had no relation to leases of real estate, but only to movable goods and chattels; that the statute related only to such goods and chattels as were capable of an immediate delivery and of an actual and continued change of possession of the things mortgaged. The trial court was clearly right in its interpretation of the words in the statute, and in holding that the statute did not cover the leasehold interest.

The judgment appealed from should be affirmed, with costs. All concur.

(19 App. Div. 341.)

### NEW YORK & N. J. ICE LINES v. HOWELL.

(Supreme Court, Appellate Division, First Department. July 2, 1897.)

NEW TRIAL—BRIEF IN JURY ROOM.

The fact that the trial brief of the counsel of a party has, accidentally and without the knowledge of such counsel, gotten into the jury room, constitutes no reason for setting aside the verdict of the jury, when it affirmatively appears, by the affidavits of all the jurors, that none of them read the brief, or were acquainted with its contents. O'Brien v. Insurance Co., 38 N. Y. Super. Ct. 482, distinguished.

Appeal from special term.

Action by the New York & New Jersey Ice Lines against Monroe Howell. From an order setting aside a verdict for plaintiff, it appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTER-
SON, INGRAHAM, and PARKER, JJ.

F. S. Smith, for appellant.
W. R. Wilder, for respondent.

PER CURIAM. Upon an examination of the record in this case, it appears that the trial brief of the plaintiff's counsel got into the jury room, together with the exhibits in the action, entirely without the knowledge of the counsel, and purely by accident. It further appears from the affidavits of the jurors that none of them either read it or were acquainted with its contents, and that, therefore, it could not have had any influence upon their verdict. The case of O'Brien v. Insurance Co., 38 N. Y. Super. Ct. 482, is cited by the counsel for the respondent as a case practically on all fours with the case at bar, the counsel stating that none other can be cited that is more apropos. Some extracts are then given from the opinion, but certain features which are alluded to therein, and which clearly distinguish the case cited from the one at bar, seem to be carefully excluded. It appeared from this opinion that two of the jurors stated to the plaintiff's counsel that they had read the paper in question in the jury room; and apparently the only affidavit against this proposition was that of the juryman who carried the books into the jury room. He stated that he laid the books on the table in the room, and that they remained there during the entire deliberations of the jury, and that no one, so far as he knew or believed, examined either of the books or their contents, or saw the paper inside the small book, and that neither the paper nor its contents were alluded to in the discussion. Here the extract stops. The opinion however continues: "This may be quite correct, and yet it fails to show that the paper was not seen or read by some of the jury. His affidavit simply shows that he failed to observe any of the jury reading it." In the case at bar every juryman has sworn that he had not read the paper, and did not know its contents. Then the colloquy which occurred between the plaintiff's counsel and the foreman of the jury appears, in which certain statements of some others of the jurors were given, and the court say: "Even if weight is attached to this conversation after the verdict, it fails to show that the paper was not read by any of the jury. It simply shows that two or three of the jury stated in the presence of the others that the paper was not read by any juror,"—a case entirely different from the one at bar. In that case the paper was seen by some, and perhaps by all, of the jurymen, and the presumption seems to be that it was read wholly or in part, or referred to, by some one of those who saw it. It seems to us that it would be difficult to find two cases upon the same subject which were so radically different in all their essential features.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.